IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGINIA HOSPITAL & )
HEALTHCARE ASSOCIATION, *et al.*, )
                                          )
         Plaintiffs, )
                                          )
v.                                    )   Civil Action No. 3:20cv587–HEH
                                          )
KAREN KIMSEY, *in her official* )
*Capacity as Director of the Virginia* )
*Department of Medical Assistance* )
*Services*, )
                                          )
         Defendant. )

**MEMORANDUM OPINION**
**(Granting Defendant's Motion to Dismiss)**

This matter is before the Court on two Motions, which principally involve the Commonwealth of Virginia's Medicaid reimbursement rates and their applicability to emergency rooms and hospital readmissions. On July 30, 2020, the Virginia Hospital and Healthcare Association, Virginia College of Emergency Physicians, and the Medical Society of Virginia ("Plaintiffs") filed suit in this Court, seeking to enjoin Karen Kimsey ("Defendant"), acting in her official capacity as the Director of the Virginia Department of Medical Assistance Services, from enforcing legislation newly enacted by the Virginia General Assembly. (Compl., ECF No. 1.) As the Complaint sought only injunctive relief, Plaintiffs' Motion for Preliminary Injunction (ECF No. 10) soon followed, and Defendant filed her Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction thereafter (ECF No. 14).

The parties have now filed memoranda supporting their respective positions on each Motion, and the Court heard oral argument on both Motions on September 16, 2020. For the reasons that follow, the Court will grant Defendant's Motion to Dismiss and deny Plaintiffs' Motion for Preliminary Injunction.

## I.   BACKGROUND

In April of 2020, the Virginia General Assembly reconvened to reconsider bills that were proposed and vetoed during the 2020 Legislative Session. (Compl. at ¶ 22.) During this session, the General Assembly approved a reduced budget that included two measures affecting reimbursement for hospital services provided to the beneficiaries of Virginia's Medicaid program. (*Id.* at ¶ 23–24.) The new budget made two fundamental changes in the previously established reimbursement scheme: (1) the Downcoding Provision, and (2) the Readmission Provision. (*Id.* at 25–31.) The Downcoding Provision states, in relevant part, that:

> The Department of Medical Assistance Services shall amend the State Plan for Medical Assistance Services to allow the pending, reviewing and the reducing of fees for avoidable emergency room claims for codes 99282, 99283 and 99284, both physician and facility. The department shall utilize the avoidable emergency room diagnosis code list currently used for Managed Care Organization clinical efficiency rate adjustments. If the emergency room claim is identified as a preventable emergency room diagnosis, the department shall direct the Managed Care Organizations to default to the payment amount for code 99281, commensurate with the acuity of the visit.

(2020 Va. Acts ch. 1289, at 369.) The Readmission Provision states, in relevant part, that:

> The Department of Medical Assistance Services shall amend the State Plan . . . to modify the definition of readmissions to include cases when patients

2

are readmitted to a hospital for the same or a similar diagnosis within 30 days of discharge, excluding planned readmissions, obstetrical readmissions, admissions to critical access hospitals, or in any case where the patient was originally discharged against medical advice. If the patient is readmitted to the same hospital for a potentially preventable readmission then the payment for such cases shall be paid at 50 percent of the normal rate, except that a readmission within five days of discharge shall be considered a continuation of the same stay and shall not be treated as a new case.

(*Id.*)

Plaintiffs allege three causes of action in their Complaint: a violation of the Takings Clause of the Fifth Amendment (Count One); preemption under 42 U.S.C. § 1396a(a)(30)(A) (Count Two); and preemption under 42 U.S.C. § 1396u-2(b)(2) and 42 C.F.R. § 438.114(c)(1) (Count Three). Plaintiffs seek only declaratory and injunctive relief under all counts.

Plaintiffs contend that the Downcoding Provision constitutes a taking because emergency room providers could treat a patient for a more severe condition, expending time and resources, but if that same patient eventually is actually diagnosed with a less severe condition, the providers would only be reimbursed as if they provided a lower level of care. The Readmission Provision reduces reimbursement rates by fifty percent for certain readmissions considered potentially preventable between five and thirty days after discharge. Plaintiffs allege that this provision similarly violates the Takings Clause by disrupting providers' investment-backed expectations and appropriating providers' services and resources without just compensation. Finally, Plaintiffs argue that both provisions are incompatible with, and in violation of, federal Medicaid laws and are thus preempted.

3

In her Motion, Defendant asserts that all three of Plaintiffs' claims should be dismissed because the Court lacks subject matter jurisdiction and Plaintiffs' Complaint fails to state a claim upon which relief may be granted.[1] Defendant first argues that Plaintiffs' takings claim under Count One fails to state a claim upon which relief may be granted because prospective injunctive relief is unavailable for a takings claim. In the alternative, Defendant contends that Plaintiffs fail to state a takings claim under Count One because they have not identified any constitutionally protected property interest subject to a taking. Finally, Defendant claims that, even if Plaintiffs have a constitutionally protected property interest, no taking occurred.

Regarding Plaintiffs' statutory claims in Counts Two and Three, Defendant argues that no statute cited by Plaintiffs creates a private right of action. Even if one of the statutes cited by Plaintiffs may create a private right of action, Defendant asserts that the statutes could only create a cause of action for Medicaid *recipients*, not health care providers, such as Plaintiffs here. As detailed below, this Court finds that Plaintiffs fail to assert a redressable injury.

## II. STANDARD OF REVIEW

In her Motion, Defendant invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as grounds for dismissing Plaintiffs' claims. This Court's decision rests on

---

[1] Defendant also contends that Plaintiffs' claims are barred because Plaintiffs lack associational standing and Defendant is entitled to sovereign immunity under Count One. Because this Court finds that prospective injunctive relief is unavailable under takings claims, and that Plaintiffs fail to state a cause of action under their statutory claims, this Court need not address associational standing or sovereign immunity.

4

standing, and therefore this Court finds that Rule 12(b)(1) guides its analysis. *See, e.g., Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009).

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the case. A linchpin of this Court's authority to act, Plaintiffs bear the burden to establish such jurisdiction throughout the proceeding. *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A critical element of federal subject matter jurisdiction is standing. To establish standing, a plaintiff must demonstrate three irreducible constitutional minima: an injury-in-fact that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; an injury that is fairly traceable to the challenged action of the defendant; and that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The third standing prong, redressability, ensures that courts only have jurisdiction to intervene when a court can address and provide a remedy for a particular injury. *See Crutchfield v. U.S. Army Corps. of Eng'rs*, 230 F. Supp. 2d 687, 694–95 (E.D. Va. 2002) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000)). A plaintiff bears the burden of establishing that she has standing for each type of relief sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

5

## III. DISCUSSION

**A. Plaintiffs cannot obtain injunctive relief under a Fifth Amendment Takings Clause claim.**

Plaintiffs claim that the Downcoding Provision and the Readmission Provision (collectively "the Budget Items") violate the Takings Clause of the Fifth Amendment, which prohibits the government from taking "private property" for public use, "without just compensation." U.S. CONST. amend. V. Plaintiffs seek injunctive relief to prevent an unconstitutional taking of the economic value of hospitals' and doctors' services and supplies for the public's own use and benefit without paying just compensation.

However, in takings claims, "the availability of subsequent compensation mean[s] that such an equitable remedy [is] not available." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2175 (2019). Equitable relief, such as the injunction sought in this case, is unavailable because "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* at 2176. A Takings Clause violation occurs when a government "takes property without compensation, and . . . a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Id.* at 2177.

In *Knick*, the Supreme Court overruled *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), where the Court previously held that a property owner "has not suffered a violation of his Fifth Amendment rights—and thus cannot bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law." *Knick*, 139 S. Ct. at 2167. A property

6

owner, Rose Mary Knick, brought a claim for declaratory and injunctive relief. *Id.* at 2168. Finding that Knick could bring a damages claim in federal court following an alleged taking, Chief Justice Roberts, speaking for the Court, emphasized that "[g]overnments need not fear that our holding will lead federal courts to invalidate their regulations as unconstitutional. As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed." *Id.* at 2179.

Plaintiffs are foreclosed from seeking injunctive relief under Count One because they may bring an action seeking just compensation, as has been an available remedy for nearly 150 years. *See id.* Plaintiffs therefore lack standing to bring their takings claim under Count One because they state no claim that can be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)). Accordingly the Court will grant Defendant's Motion to Dismiss Count One.

**B. Plaintiffs have no cause of action under 42 U.S.C. § 1396a(a)(30)(A), 42 U.S.C. § 1396u-2(b)(2), or 42 C.F.R. § 438.114(c)(1).**

Plaintiffs allege in Count Two that the Budget Items are preempted by 42 U.S.C. § 1396a(a)(30)(A) (hereinafter "§ 30(A)"), and in Count Three that the Downcoding Provision is preempted by 42 U.S.C. § 1396u-2(b)(2) (hereinafter "§ u-2") and 42 C.F.R. § 438.114(c)(1). Plaintiffs lack standing to bring their preemption claims because Plaintiffs' alleged injury is not redressable by this Court. Plaintiffs cite no statute or other authority that creates a private cause of action under Counts Two and Three.

7

Section 30(A) requires that state Medicaid plans delineate available services and payment thereof to prevent inefficiency and set payment amounts consistent "with efficiency, economy, and quality of care." As currently written, § 30(A) includes no requirement that reimbursement rates are "reasonable." The entire section simply requires state plans to:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]

§ 30(A). Plaintiffs argue under *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990), that states participating in Medicaid must adopt reasonable and adequate reimbursement rates, and therefore, that health care providers have enforceable rights to reasonable rates under § 1983. Although *Wilder* was decided under prior law, Plaintiffs allege that the current § 30(A) contains substantially similar language. Accordingly, Plaintiffs contend, the Budget Items violate § 30(A) because they are unreasonable and are preempted by the federal statute.

Plaintiffs' Complaint invokes the Supremacy Clause under Counts Two and Three and claims that the Budget Items are preempted by the cited federal statutes. Plaintiffs also argue in their briefs that these statutes confer rights upon Plaintiffs that are enforceable under § 1983. However, neither the Supremacy Clause nor § 1983 alone creates a private cause of action. Section 1983 is a vehicle "to enforce a federal statute

8

only when the underlying statute itself unambiguously 'confers an individual right' on the plaintiff." *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). Similarly, the Supremacy Clause does not create a private right of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–35 (2015) ("[T]he Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action") (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1979)). Plaintiffs are unable to rely on either the Supremacy Clause or § 1983 to create a private cause of action, but federal courts have the power, "subject to express and implied statutory limitations," to enjoin "unlawful executive action." *Armstrong*, 575 U.S. at 327. At issue then, is whether the statutory underpinnings of Counts Two and Three of Plaintiffs' Complaint confer any individual rights on Plaintiffs enforceable via the Supremacy Clause or § 1983.

First, the Supreme Court has specifically held that § 30(A) precludes the availability of equitable relief. *Id.* at 328. In *Armstrong*, the Supreme Court determined that Congress intended to foreclose equitable relief under § 30(A) because of the "judicially unadministrable nature of § 30(A)'s text" and because "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements . . . is the withholding of Medicaid funds by the Secretary of Health and Human Services." *Id.* The Supreme Court further stated that § 30(A) "lacks the sort of rights-creating language needed to imply a private right of action." *Id.* at 331.

9

In *Armstrong*, providers of habilitation services sued two officials of the Idaho Health and Welfare Department, claiming that the state reimbursed the providers at rates lower than permitted by § 30(A). *Id.* at 323–24. The habilitation services providers sought to require the state to increase the reimbursement rates. *Id.* The providers claimed an implied right of action under the Supremacy Clause for injunctive relief against the enforcement of the underlying legislation. *Id.* at 324–27. Alternatively, they argued that the suit should be allowed to proceed against the state actors in equity. *Id.* The Court rejected both theories and held that neither the Supremacy Clause nor § 30(A) creates a cause of action. *Id.*

Here, Plaintiffs under Count Two invoke the Supremacy Clause and § 1983. As explicitly held by *Armstrong*, neither the Supremacy Clause nor § 30(A) provides a private right of action. *Id.* Section 1983 alone does not create a private right of action as it is simply a vehicle for enforcing statutes that confer rights. *See Gonzaga Univ.*, 536 U.S. at 282 (holding that the Family Education Rights and Privacy Act's nondisclosure provisions created no personal rights enforceable under § 1983). Plaintiff health care providers are therefore unable to use the Supremacy Clause or § 1983 to create a private right of action under § 30(A). *See Armstrong*, 575 U.S. at 328. Accordingly, Count Two fails to state an actionable claim and will be dismissed for lack of standing.

Similarly, the language of § u-2 demonstrates the legislature's intent to foreclose equitable relief. Section u-2, in relevant part, states the following:

> Each contract with a medicaid managed care organization under section 1396b(m) of this title and each contract with a primary care case manager under section 1396d(t)(3) of this title shall require the organization or

10

> manager . . . to provide coverage for emergency services (as defined in subparagraph (B)) without regard to prior authorization or the emergency care provider's contractual relationship with the organization or manager, and . . . to comply with guidelines established under section 1395w-22(d)(2) of this title (respecting coordination of post-stabilization care) in the same manner as such guidelines apply to Medicare+Choice plans offered under part C of subchapter XVIII.

(42 U.S.C. § 1396u-2(b)(2).) Section u-2 requires that contracts between states and Medicaid providers include coverage for emergency services for enrollees. Emergency services are defined as those necessary to evaluate or stabilize a medical condition that manifests by "acute symptoms of sufficient severity" such that "a prudent layperson" could reasonably expect would result in death or serious bodily injury without immediate medical attention. *Id.* Plaintiffs argue that the Budget Items conflict with § u-2 because the Budget Items now force providers to treat enrollees based only on eventual diagnosis but § u-2 forces providers to furnish emergency services and incur expenses based on symptoms. This Court is not convinced that Plaintiffs correctly interpret the Budget Items language, but regardless, § u-2 does not provide any individual rights to support a cause of action for Plaintiffs here.

For a statute to create a private cause of action enforceable via § 1983, (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) the plaintiff must show that the right claimed is not "so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) the right claimed must be stated in "mandatory, rather than precatory, terms," demonstrating that Congress unambiguously imposed a binding obligation on the States. *Blessing v. Freestone*, 520

11

U.S. 329, 340–41 (1997) (quoting *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 431–32 (1987)). The language of § u-2 does not satisfy any of the *Blessing* factors.

Section u-2 is not written to benefit Plaintiffs. This particular portion of the Medicaid statutes requires a contractual provision dealing with emergency services. The language of § u-2 "is akin to the type of institutional policy and practice language" that the Supreme Court held in *Gonzaga* does not create any individual rights. *Bio-Med. Applications of N.C., Inc. v. Elec. Data Sys. Corp.*, 412 F. Supp. 2d 549, 553 (E.D.N.C. 2006) (finding that 42 U.S.C. § 1396a(a)(30)(A) does not confer individual rights enforceable under § 1983 because the statute does not focus on individuals (citing *Gonzaga*, 536 U.S. at 288)). While § u-2 references health care providers, it does not focus on or benefit health care providers in any way. If anything, the statute benefits Medicaid beneficiaries by requiring that the provision of emergency services be incorporated into contracts between the state Medicaid agency and health care providers. This Court finds no right or benefit conferred upon health care providers in any portion of § u-2. Therefore, any right claimed by Plaintiffs under § u-2 is necessarily so vague and amorphous so as to strain this Court's competence. Section u-2 is phrased as a directive for a contractual provision regarding emergency medical services, not as a right to reimbursement rates for health care providers. *See Armstrong*, 575 U.S. at 331. Like § 30(A), § u-2 therefore "lacks the sort of rights-creating language needed to imply a private right of action." *Id.* Accordingly, the Court holds that § u-2 does not create any rights enforceable by the Supremacy Clause or § 1983.

Third, 42 C.F.R. § 438.114(c)(1) likewise does not contain any rights-creating language needed to imply a private right of action. Section 438.114(c)(1) states:

> The entities identified in paragraph (b) of this section . . . [m]ust cover and pay for emergency services regardless of whether the provider that furnishes the services has a contract with the MCO, PIHP, PAHP, PCCM or PCCM entity; and . . . [m]ay not deny payment for treatment obtained under either of the following circumstances: (A) An enrollee had an emergency medical condition, including cases in which the absence of immediate medical attention would not have had the outcomes specified in paragraphs (1), (2), and (3) of the definition of emergency medical condition in paragraph (a) of this section. (B) A representative of the MCO, PIHP, PAHP, PCCM, or PCCM entity instructs the enrollee to seek emergency services.

(42 C.F.R. § 438.114(c)(1).) As a threshold matter, § 438.114(c)(1) falls under the subpart of Title 42 addressing *enrollee* rights and protections, not provider rights and protections. The text of the regulation is accordingly focused on access to emergency services for enrollees. No part of the text creates a right for providers in the provision of or reimbursement for such services. Therefore, lacking any language conferring a right upon providers, § 438.114(c)(1) creates no enforceable right to support a private cause of action enforceable through § 1983.

Moreover, § 438.114(c)(1) alone cannot be the basis for a § 1983 claim because administrative regulations cannot create enforceable § 1983 interests not already implicit in the enforcing statute. *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987) (finding that 34 C.F.R. § 361.110 *et seq.* cannot create an enforceable § 1983 interest not already implicit in the enforcing statute); *see also HCMF Corp. v. Allen*, 238 F.3d 273, 277 (4th Cir. 2001) (holding that a nursing home's claim challenging Medicaid reimbursement rates could not be brought under § 1983 in part because an administrative agency letter created

no enforceable federal right). Thus, the Court finds that Plaintiffs do not state a cause of action under § 438.114(c)(1).

Plaintiffs lack standing to bring their preemption claims under Counts Two and Three because Plaintiffs' injury is not redressable by this Court. Counts Two and Three, like Count One, state no basis for a private cause of action, and therefore state no claim that can be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)). The Court will grant Defendant's Motion to Dismiss Counts Two and Three.

This Court recognizes that the Budget Items may result in a substantial reduction in Medicaid reimbursement income for many Virginia hospitals and other health care providers. This Court also appreciates Plaintiffs' concerns that hospitals must continually provide adequate care despite that currently, Medicaid enrollees—who tend to have less access to primary care—use emergency rooms at rates almost doubling privately-insured patients. However, this Court has no authority to grant the relief requested no matter how compelling it may be. Such recourse lies in the hands of the General Assembly.

Finding that Plaintiffs lack standing to bring the claims alleged in their Complaint, the Court will grant Defendant's Motion to Dismiss Plaintiffs' Complaint. Because Defendant's Motion to Dismiss will be granted, this Court need not consider Plaintiffs' Motion for Preliminary Injunction. Therefore, Plaintiffs' Complaint will be dismissed without prejudice and Plaintiffs' Motion for Preliminary Injunction will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                   /s/
                                          Henry E. Hudson
                                          Senior United States District Judge

Date: **Oct. 7, 2020**
Richmond, Virginia